UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS


~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**LAURA LOMBARDI,**                                    Chapter 13
    Debtor                                    Case No. 11-10262-JNF


~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~


**MEMORANDUM**


**I. INTRODUCTION**

The matter before the Court is the Chapter 13 Trustee's Motion for Modification of

Plan after Confirmation pursuant to 11 U.S.C. § 1329(a) ("the Motion for Modification").

Laura Lombardi (the "Debtor") filed an Opposition to the Chapter 13 Trustee's Motion

for Modification, and the Chapter 13 Trustee, in turn, filed a Reply to the Debtor's

Opposition.  The Court heard the matter on March 31, 2016.  The parties agreed that the

Court would determine the matter based solely on their submissions without the

necessity of an evidentiary hearing.  The parties filed an Agreed Statement of Facts on

April 15, 2016.  Accordingly, the Court adopts the parties' recitation of facts as set forth

in their Agreed Statement and finds and rules as follows.

## II. FACTS

The Debtor filed her Chapter 13 case on January 13, 2011.[1]  She filed her Chapter 13 plan approximately one month later on February 11, 2011.  Pursuant to 11 U.S.C. § 1326, she was required to commence making payments not later than February 12, 2011.

On January 5, 2012, the Debtor filed a Second Amended Chapter 13 Plan ("the Confirmed Plan").[2]  Through that plan, the Debtor proposed to retain real property located at 1 Main Street Park, Malden, Massachusetts, which she valued at $301,000, and property located at 1134-1136 Buren Avenue, Venice, California, which she valued at $568,500.  The Debtor listed both properties on Schedule A-Real Property which she filed on February 11, 2011.[3]

---

[1] The Court may take judicial notice of its own docket. *See* LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").

[2] The Debtor's Chapter 13 case did not proceed smoothly.  The Debtor filed three Chapter 13 plans, including her original Chapter 13 plan and a Second Amended Chapter 13 plan which she withdrew.  Her plans garnered objections by secured creditors and the Chapter 13 Trustee.  The Chapter 13 Trustee moved to dismiss the Debtor's case, and, on September 19, 2011, in the absence of a timely objection, the Court dismissed the Debtor's case.  The case was closed on October 11, 2011.  On November 18, 2011, the Debtor moved to vacate the dismissal of her case, which motion the Court denied.  Upon reconsideration of that order, however, and upon the filing of an affidavit by the Debtor attesting to satisfaction of all current arrears with respect to plan payments, the Court vacated its dismissal order on December 18, 2011.  On January 5, 2012, the Debtor withdrew the existing Second Amended Plan and filed another Second Amended Plan which the Court eventually confirmed.

[3] The Debtor did not disclose any Executory Contracts or Unexpired Leases on Schedule G.  On Schedule I-Current Income of Individual Debtor, however, she disclosed monthly income from real property in the sum of $5,050.

On September 11, 2012, this Court entered an Order Confirming [Second] Amended Chapter 13 Plan ("the Confirmation Order"). The Confirmation Order provided:

> The Debtor(s) shall pay to the Chapter 13 Trustee the sum of $1,859.00* per month commencing February 1, 2011 which payments shall continue through the completion of the Plan and shall be made on the 1st day of each month unless otherwise ordered by the Court. . . .
>
> The effective date of confirmation of the Plan is February 1, 2011. . . .
>
> *As of January 31, 2012, the Debtor shall pay the sum of $12,936.00 to the Trustee. Commencing February 01, 2012, the Debtor shall pay the sum of $1,859.00 per month to the Trustee for the remaining 48 months.[4]

The total payments to be made under the Confirmed Plan equaled $102,168.00, an amount slightly higher than the total cost of the Confirmed Plan of $102,156.00 because monthly payments are rounded up to a whole number.

The Confirmed Plan provided for a dividend of no less than 0% to unsecured creditors whose claims totaled $173,963.00, including deficiency claims, totaling $89,196.00, of BAC Home Loan Services in the sum of $38,269.00 for the Debtor's real

---

[4] The Confirmation Order also provided:

> Unless otherwise ordered by the court, all property of the estate as defined in U.S.C. §§ 541 and 1306, including, but not limited to, any appreciation in the value of real property owned by the debtor as of the commencement of the case, shall remain property of the estate during the term of the plan and shall vest in the Debtor(s) only upon discharge. All property of the estate shall remain within the exclusive jurisdiction of the bankruptcy court. The Debtor(s) shall not transfer, sell or otherwise alienate property of the estate other than in accordance with the confirmed plan or other order of the bankruptcy court. The debtor shall be responsible for preserving and protecting property of the estate.

property located at 1 Main Street Park in Malden, Massachusetts and GMAC Mortgage

in the sum of $50,927.00 for the Debtor's real property located at 1134-1136 Buren Avenue

in Venice, California. The Debtor through the Confirmed Plan proposed to modify both

of these secured claims and treat them as wholly unsecured.

Although the Debtor was obligated to pay $12,936.00 into her plan prior to

February 1, 2012, she actually paid $11,632.00.  The Debtor contends that she was not told

by anyone that she needed to pay an additional $1,859 at that time.

The Debtor retained her present counsel in August 2015, following the withdrawal

from Massachusetts bankruptcy practice of attorneys Haneen Katub and Jacob T. Simon.

In August of 2015, Walter Oney, Esq. ("Attorney Oney") obtained a case report from

bankruptcylink.com ("EPIQ"), a web site operated by Epiq Systems, Inc. and used by the

Trustee to provide information about Chapter 13 cases to debtors and their attorneys.

Attorney Oney interpreted the report to show that the Debtor was entitled to a refund of

approximately $11,000.  Attorney Oney called the Chapter 13 Trustee's office in August

of 2015 and spoke with a case administrator.  Attorney Oney represents that an unnamed

gentleman indicated that the Debtor had completed her plan payments and was, in fact,

entitled to a sizeable refund.  Attorney Oney filed a Notice of Appearance and a

Disclosure of Compensation of Attorney for Debtor on September 22, 2015.

The Chapter Trustee does not dispute Attorney Oney's understanding of the

conversation.  The Chapter 13 Trustee, however, represents that there is no case note in

her file maintained by her office of the conversation and the case administrator assigned

to the Debtor's case has no recollection of the conversation.

4

On the strength of the information Attorney Oney obtained from EPIQ and his conversation with an employee of the Chapter 13 Trustee, he advised the Debtor to cease making plan payments, to take a debtor education course, and to sign an affidavit attesting to the facts required to obtain a discharge. The Debtor followed Attorney Oney's advice and made no payments to the Trustee during September and October 2015.

On October 16, 2015, the Debtor filed a Motion for Entry of Discharge. On October 20, 2015, the Trustee filed an Opposition to the Motion for Entry of Discharge, stating that the Debtor owed $11,297.00 to complete the Confirmed Plan and pay all allowed claims.

On October 20, 2015, Attorney Oney called Patricia Remer, Esq., Staff Attorney to the Chapter 13 Trustee ("Attorney Remer"), to discuss the Objection to the Motion for Entry of Discharge, at which time Attorney Remer explained to Attorney Oney why the Debtor still owed a balance to complete the Confirmed Plan. On October 20, 2015, the Debtor withdrew the Motion for Entry of Discharge. The Debtor resumed making monthly payments of $1,861 to the Trustee in November 2015.

The Debtor's mother died on January 8, 2016. The Debtor became entitled to share an inherited IRA and a brokerage account with her siblings. The probate estate has now been fully administered. The Debtor's share of the estate is approximately $120,000, which is presently deposited in a bank account over which the Debtor has control. The Debtor has pledged not to alienate these proceeds pending further orders from this Court.

On January 11, 2016, the Trustee filed a Motion for Order Dismissing Case for Failure to Make Plan Payments. The Trustee alleged in her Motion that the Debtor was in arrears in the amount of $5,716.00 which equaled 3.07 months of plan payments.

5

Sometime in January of 2016, Attorney Oney called Attorney Remer and informed her

that the Debtor might be receiving an inheritance. Counsel did not know the exact

amount that the Debtor was entitled to receive at that time.

According to the parties, the last payment under the Confirmed Plan was due on

January 1, 2016. As of January 31, 2016, the Debtor had not completed the required

payments under the Confirmed Plan.  On February 4, 2016, the Debtor filed a Response

to the Motion to Dismiss in which she indicated that she intended to use some of the

inheritance money to cure arrears. The Debtor indicated in a footnote that the inheritance

might exceed $50,000.00.[5]

As of February 4, 2016, the Debtor had not completed the required payments

under the Confirmed Plan.  On March 4, 2016, the Trustee filed the Motion for

Modification. At that time, the Debtor had not made all payments required under the

Confirmed Plan.  On March 14, 2016, the Trustee received an email from Attorney Oney

asking her to explain to him the alleged discrepancy between the Trustee's records and

the data available from EPIQ.  Counsel indicated that the EPIQ report showed total

payments of $109,977.00 and also showed an overpayment of $6,152.27. The Trustee sent

a reply email explaining that the refund received in 2011 was due to the dismissal of the

case and that it was not an actual refund due at this time.[6]  The Trustee then explained to

---

[5] In her Opposition to the Trustee's Motion for Modification, the Debtor stated that her
share of her mother's estate is approximately $120,000.

[6] In her Limited Objection to the Debtor's Motion to Reconsider Order Denying Motion
to Vacate Dismissal and Reopen Case, the Chapter 13 Trustee represented:

Attorney Oney that the refund in the amount of $11,482.00 is included as a receipt because

after it was issued the Debtor repaid it to the Trustee.  Because it was repayment of a

refund, it did not actually count as a receipt towards the cost of the Plan. When the

amount of $11,482.00 was subtracted from the total receipts of $109,977.00, the receipts

totaled $98,315.00 which was the actual amount of payments that had posted as of March

4, 2016.  The amount due to pay all creditors in full under the Confirmed Plan was

$102,168.00, which left a balance due of $3,853.00.

A receipt and refund history shows two (2) refunds issued to the Debtor.  The first

is in the amount of $10,028.00 dated October 7, 2011, and the second is in the amount of

$1,454.00 dated November 7, 2011. These total $11,482.00. The refunds were issued

because the Debtor's case was dismissed on September 19, 2011. On November 29, 2011

------

The Debtor states in the Motion that the Debtor has "already paid a total of $10,028.00 dollars into her Chapter 13 plan at the time of dismissal." In fact all of those funds have been refunded to the Debtor and the Trustee does not have any funds on hand at this time.

Therefore, if the Motion is granted and the case reinstated, the Debtor will be in arrears in the amount of $17,656.00 which equals eight (8) months of plan payments NOT including the current month. Unless the Debtor has the ability to cure the arrears, the Trustee objects to the reconsideration of the Motion Denying the Motion to Vacate Dismissal and Reopen case.

The Debtor in her affidavit in support of vacating the dismissal of her case, stated:

The Chapter 13 Trustee has agreed that I need to pay the amount of $11,482.00 to satisfy the amount currently owed in arrears on my Chapter 13 Plan.

I have submitted a cashier's check made out to the Chapter 13 Trustee in the amount of $11,482.00 to my attorney.

the Debtor moved to reopen the case. The Trustee filed a Limited Objection stating that

the Debtor had received a refund and the Trustee was not holding any monies, adding

that if the case were reinstated the Debtor would need to repay the refunded monies. On

December 9, 2011, the Court issued an Order requiring the Debtor to file an Affidavit by

December 16, 2011, stating that she had cured all plan arrears as set forth in the Trustee's

Limited Objection. On December 13, 2011, the Debtor filed the required Affidavit stating

that she had submitted a payment in the amount of $11,482.00 to the Trustee which

resulted in the case being reopened on December 28, 2011. Therefore, as noted in the

receipts and refund history, the funds paid in were in the amount of $113,658.00, the

funds paid out were in the amount of $11,482.00, and the actual amount paid as of April

11, 2016 was $102,176.00.

At 7:49 a.m. on March 3, 2016, one day before the Trustee filed the Motion for

Modification, the Debtor instructed tfsbillpay.com, a web site used by Chapter 13 trustees

to handle plan payments, to pay $1,861.00 to the Trustee. That payment, however, did

not actually post to the Trustee's account until March 11, 2016.  TFS Bill Pay's website

advises users that TFS payments take five (5) business days from when they are initiated

to clear their system and arrive at the Trustee's office.  On March 20, 2016, the Debtor

filed an Opposition to the Motion for Modification.  In her Opposition, the Debtor

admitted that she still owed a balance to the Trustee, and indicated that Attorney Oney

had calculated the amount due as $2,142.00, not the $1,992.00 stated by the Trustee.

On March 18, 2016, the Debtor initiated a $2,000.00 payment via tfsbillpay.com.

That payment did not actually post to the Trustee's account until March 28, 2016.  On

March 30, 2016, the Trustee withdrew the Motion to Dismiss because the Debtor had

completed the required payments under the Confirmed Plan.

## III. POSITIONS OF THE PARTIES

A. The Chapter 13 Trustee

The Trustee contends that the Debtor's inheritance is property of the estate for

which the Debtor has not claimed an exemption and that the monies she received as an

inheritance must be turned over to the Trustee for payment to creditors.  Pursuant to 11

U.S.C. §1329(a), the Trustee asserts that she may request modification of the plan to

increase the amount of payments on claims of a particular class provided for by the plan.

She notes that the Confirmed Plan expired in January of 2016, but that the Debtor did not

complete all payments required under the Confirmed Plan until the end of March 2016.

Accordingly, she seeks to modify the Confirmed Plan to increase the total cost of the plan

by the amount of the non-exempt inheritance.

B. The Debtor

The Debtor observes the following:

The Debtor's confirmed plan (doc. # 89) calls for 48 payments of $1,859
starting on February 1, 2012. The confirmation order (doc. # 105) is in accord
as to the 48 payments. The order (which was not entered until September
11, 2012) also provides that "[a]s of January 31, 2012, the Debtor shall pay
the sum of $12,936.00 to the Trustee." This lump sum is $1,454 higher than
the $11,482 that the Trustee refunded to the Debtor on October 7 and
November 7, 2011 in connection with a later-vacated dismissal of the case.
The Debtor paid $11,482 on December 22, 2011. The lump sum is, however,
the amount that the confirmed plan asserts to have been paid into the plan
prior to the effective date of February 1, 2012. (Doc. # 89, line VI.j)[.] That
assertion appears incorrect, but no-one [sic] ever told the Debtor to pay
$1,454 in addition to repaying the $11,482 refund.

9

The Debtor also emphasizes that her counsel was told by an unidentified employee of the

Chapter 13 Trustee, consistent with information available on EPIQ, that she was entitled

to a sizeable refund, leading to a decision to cease making payments to the Trustee in

September and October 2015 (which would total $3,718.00).  On January 11, 2016, the

Chapter 13 Trustee filed her Motion to Dismiss, three days after the Debtor's mother

passed away.  In her dismissal motion, the Trustee indicated that the Debtor was in

arrears in the amount of $5,716 (approximately three months).  The Debtor states her

counsel examined the payment history for the Debtor's Confirmed Plan and determined

that she needed to make payments during November, December, and January and to

make two additional payments to cure the arrears in her 60-month plan, adding that she

made the five payments between November 10, 2015 and March 3, 2016, thus making the

remaining 48 (out of 60) monthly payments called for by the September 11, 2012

confirmation order.  Nevertheless, the Debtor recognized the following in footnotes:

> The EPIQ payment history (Ex. A) shows a payment as having been posted
> to the Debtor's account on March 11. The Debtor initiated that payment
> through tfsbillpay.com at 7:49 a.m. on March 3 [Ex. C].

> Based on a detailed analysis of the EPIQ payment history (which counsel
> performed for the first time while writing this brief), counsel believes that
> the additional amount owed should be $2,142: in addition to not paying the
> extra $1,454 noted in ¶ 9, the Debtor was short by a total of $779 in her first
> 6 payments after January 2012, overpaid by $9 on April 11, 2013, and
> overpaid the remaining 41 post-amendment payments by a total of $82. [Ex.
> A].

The Debtor contends that the Chapter 13 Trustee's Motion for Modification should

be denied because she has completed all payments required by the confirmed plan. She

adds:

Even if the plan could be modified, the value of the inheritance should not be included in the liquidation analysis for two reasons. First, an inheritance to which the Debtor becomes entitled more than 180 days after commencing the case is not estate property. Second, the liquidation value of the Debtor's estate should be computed with reference to § 348(f)(1)(A), pursuant to which only property that was in the estate on January 13, 2011 (or that would have been brought into the estate by § 541(a)(5)) and that remains in the Debtor's possession or control should be considered.

The Debtor also argues that if she had been properly advised in January 2012 and in August 2015, there would not be a question today about whether she became entitled to receive her inheritance before completion of payments.

## IV. DISCUSSION

The Debtor's misperception as to when payments under her Confirmed Plan were completed, regardless of whether it was the result of a miscalculation in the confirmation order entered on September 11, 2012, or uncorroborated information from EPIQ and an employee of the Chapter 13 Trustee, cannot alter the fact as set forth in the parties' Agreed Statement of Facts that the Debtor had not completed all her plan payments until after the Chapter 13 Trustee filed her Motion to Modify.[7]  Section 1329(a) provides in pertinent part:

> At any time after confirmation of the plan but *before the completion of payments* under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
>
> > (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan. . . .

---

[7] Indeed, the material set forth in the Agreed Statement of Facts as to the information obtained from EPIQ and the Trustee's employee is irrelevant because it is undisputed that the Debtor had not completed her payments under the Confirmed Plan when her mother died.

11

(emphasis supplied).   Thus, the Chapter 13 Trustee's Motion for Modification is not

precluded by 11 U.S.C. § 1329(a).

Moreover, the Debtor's inheritance is property of the estate. *See* <u>In re Mizula</u>, 525

B.R. 569 (Bankr. D. N.H. 2015).   In <u>Mizula</u>, the court stated:

> The Debtors argue that Congress did not intend estate property to include
> inheritances acquired more than 180 days after the petition date but before
> the case is closed, dismissed, or converted. But the statutory text of §§
> 541(a)(5)(A) and 1306(a)(1) is clear that estate property includes such
> inheritances. Reliance on legislative history is unnecessary when statutory
> text is unambiguous. *See* <u>U.S. v. Woods</u>, __ U.S. __, 134 S.Ct. 557, 567 n.5,
> 187 L.Ed.2d 472 (2013) (citing <u>Mohamad v. Palestinian Auth.</u>, __ U.S. __, 132
> S.Ct. 1702, 1709, 182 L.Ed.2d 720 (2012)). The First Circuit has not addressed
> the specific issue of inheritances acquired beyond the 180–day period in §
> 541(a)(5). But two other circuit courts have, both finding that such
> inheritances are estate property. *See* <u>Carroll v. Logan (In re Carroll)</u>, 735
> F.3d 147, 150–52 (4th Cir. 2013); <u>In re Lybrook</u>, 951 F.2d 136, 137–39 (7th Cir.
> 1991); *see also* <u>In re Waldron</u>, 536 F.3d 1239, 1242 (11th Cir. 2008) (finding
> that "[i]f Congress had intended for confirmation to so dramatically affect
> the expansive definition of property of the estate found in [§] 1306, it knew
> how to draft such a provision") (citation omitted). The overwhelming
> majority of district and bankruptcy courts conclude the same, reasoning
> that § 1306(a) broadens the definition of estate property beyond what § 541
> provides. *See, e.g.*, <u>In re Tinney</u>, No. 07–42020–JJR13, 2012 WL 2742457, at *2
> (N.D. Ala. July 9, 2012); <u>In re Taylor</u>, 523 B.R. 915, 918–19 (Bankr. S.D. Ga.
> 2014); <u>In re Roberts</u>, 514 B.R. 358, 361–63 (Bankr. E.D.N.Y. 2014); <u>In re
> Castillo</u>, 508 B.R. 1, 6 (Bankr. W.D. Tex. 2014); <u>In re Ormiston</u>, 501 B.R. 303,
> 307–08 (Bankr. E.D.N.C. 2013); <u>In re Stillwaggon</u>, Case No. 9:10–bk–12289–
> FMD, 2014 WL 1087898, at *2 (Bankr. M.D. Fla. Mar. 19, 2004); *see also* <u>In re
> Durrett</u>, 187 B.R. 413, 416 (Bankr. D. N.H. 1995) (finding that "section
> 1306(a) . . . provides a special provision extending property of the estate to
> include all property that the debtor acquires after the commencement of the
> case and all earnings from services provided by the debtor after
> commencement of the case, but before the case is closed[,] is dismissed, or
> converted to a case under chapter 7); <u>In re Euerle</u>, 70 B.R. 72, 73 (Bankr. D.
> N.H.1987) (concluding that an "inheritance clearly became property of the
> estate under the provisions of §§ 541(a)(5) and 1306(a)(1)") (quotation
> omitted).

***

> In addition to property specified in § 541, property of the estate under § 1306(a)(1) includes property of the *kind* specified in § 541 acquired after the petition date but before the case is closed, dismissed, or converted.  Section § [sic] 1306(a)(1) effectively expands what constitutes estate property under § 541, therefore, to include inheritances acquired beyond the 180–day limitation set forth in § 541(a)(5). *As long as a debtor acquires an inheritance after the petition date but before the case is closed, dismissed, or converted, the non-exempt portion of the inheritance is property of the estate.*

In re Mizula, 525 B.R. at 571-72.[8]  *See also* In re Gilbert, 526 B.R. 414, 417 (Bankr. N.D. Ga. 2015)("This Court agrees with the Fourth Circuit and the majority of other courts and concludes the Property inherited more than 180 days after the chapter 13 case was commenced, but before it was closed, dismissed, or converted, is property of the estate.").

In Meza v. Truman (In re Meza), 467 F.3d 874 (5th Cir. 2006), the United States Court of Appeals for the Fifth Circuit addressed the circumstance where the debtor completes payments while a motion to modify is pending.  It observed:

> [I]f the trustee files a modification motion and the debtor *then* attempts to complete plan payments, the debtor appears to unfairly attempt to

---

[8] The New Hampshire bankruptcy court recognized the following:

> A small minority of courts, however, disagree. They cite two reasons. First, that a broad interpretation of § 1306(a)(1) renders § 1306(a)(2) superfluous. *See, e.g.*, In re Key, 465 B.R. 709, 712 (Bankr. S.D. Ga. 2012). Second, that § 1306(a)(1) incorporates the 180–day time limitation set forth in § 541(a)(5). *See, e.g.*, Le v. Walsh (In re Walsh), No. 07–60774, 2011 WL 2621018, at *1–3 (Bankr. S.D. Ga. June 15, 2011); In re Schlottman, 319 B.R. 23, 25 (Bankr. M.D. Fla. 2004). The First Circuit's Barbosa decision [Barbosa v. Solomon, 235 F.3d 31, however, specifically rejected these rationales. Barbosa, 235 F.3d at 36–37.

In re Mizula, 525 B.R. at 572.

circumvent § 1329(b)(2)'s plain language that a "plan as modified becomes the plan *unless*, after notice and a hearing, such modification is disapproved". (Emphasis added.) Whether a debtor may attempt to avoid increased plan payments by completing payments after a motion to modify is filed, but before any hearing on that motion can be held, does not appear, however, to have been addressed by this, or any other, court."

Id. at 878. The Fifth Circuit concluded: "both subsections [§1329(a) and (b)(2)] show that, when a modification request is timely filed, the completion of the plan and eventual discharge of the debtor is stayed until the bankruptcy court is allowed to consider the modification on its merits." Id. at 880.

Section 1329(b)(1) provides that "Sections 1322(a), 1322(b), and 1323(c) . . . and the requirements of section 1325(a) . . . apply to any modification under subsection (a) of this section." 11 U.S.C. § 1329(b)(1).  Accordingly, the best interest test set forth in § 1325(a)(4) applies to any plan modification.  Section 1325(a)(4) provides:

(a) Except as provided in subsection (b), the court shall confirm a plan if-- . . . (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.

11 U.S.C. § 1325(a)(4).

The Debtor, relying upon In re McAllister, 510 B.R. 409, 420 (Bankr. N.D. Ga. 2014), *aff'd on other grounds sub nom.*, Townson v. McAllister, No. 4:14-CV-00106-HLM, 2014 U.S. Dist. LEXIS 182651 (N.D. Ga. Oct. 14, 2014), argues that "§ 348(f)(1)(A) would unambiguously put the inheritance beyond the reach of a chapter 7 trustee following a good-faith conversion," adding that "[t]he legislative history of § 348(f) supports the notion that petition-date values are the correct ones for use in a liquidation analysis."  The

Debtor concludes that "[s]ection 1306 . . . has nothing to say about what property needs to be included in the liquidation analysis that § 1329 calls for."

The Debtor's position that the liquidation analysis under § 1325(a)(4) should be applied to modified plans using property of the estate on the petition date is not uniformly accepted.  In <u>In re Nachon-Torres</u>, 520 B.R. 306 (Bankr. S.D. Fla. 2014), the court considered the following question:  "if modification is appropriate, what date should be used for determining the chapter 7 test—the original petition date or the modification date?"  520 B.R. at 312.  It observed:

> There is a split of opinion amongst the courts whether, when a chapter 13 plan is modified, the chapter 7 test should be calculated as of the original petition date or as of the date of modification. While there are some well-reasoned decisions why the calculation should remain as of the original petition date, *see, e.g.,* <u>McAllister,</u> 510 B.R. 409, and <u>Euler,</u> 251 B.R. 740 [(Bankr. M.D. Fla. 2000)], I agree with the majority of the cases that have found that the appropriate date for calculation is the modification date. <u>In re Auernheimer</u>, 437 B.R. 405 (Bankr. D. Kan. 2010); <u>In re Morgan</u>, 299 B.R. 118 (Bankr. D. Md. 2003); <u>In re Nott</u>, 269 B.R. 250 (Bankr. M.D. Fla. 2000); <u>In re Barbosa</u>, 236 B.R. 540 [(Bankr. D. Mass. 1999), *aff'd,* 235 F.3d 31 (1st Cir. 2000)]. The statute provides that the date of the modified plan is the appropriate date for calculating the chapter 7 test, the legislative history supports this interpretation if, in fact, the statute is ambiguous, and finally, Eleventh Circuit case law requires such an interpretation.

<u>In re Nachon-Torres</u>, 520 B.R. at 312-13.  The Florida court specifically relied upon <u>Waldron v. Brown (In re Waldron)</u>, 536 F.3d 1239 (11th Cir. 2008), and rejected the reasoning of <u>McAllister</u>.  The Court finds the decision in <u>Nachon-Torres</u> persuasive.

This Court recognizes that the circumstances of this case are unique.  Nevertheless, holding that the liquidation analysis for a modified plan is the petition date would render § 1306 superfluous and enable the Debtor to both discharge her substantial unsecured

15

debt and simultaneously receive a windfall.  The Debtor, through her Confirmed Plan

modified two loans on properties in Massachusetts and California, thereby enabling her

to retain those properties.  She was unable, however, to propose a plan that would

provide her unsecured creditors, with claims, totaling approximately $174,000, with a

dividend.  The modification proposed by the Chapter 13 Trustee will provide a

meaningful dividend to those creditors.

## V. CONCLUSION

In view of the foregoing, the Court shall enter an order granting the Chapter 13

Trustee's Motion for Modification.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  June 7, 2016